IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2008

## WILLIAM T. UTLEY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Chester County**
**No. 04-281     Donald H. Allen, Judge**

---

**No. W2008-00304-CCA-R3-PC - Filed March 5, 2009**

---

Petitioner, William Utley, appeals the dismissal of his petition for post-conviction relief in which he alleged that his trial counsel rendered ineffective assistance of counsel. After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Kandi Kelley Collins, Jackson, Tennessee, for the appellant, William T. Utley.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; Alfred Earls, Assistant District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Following a jury trial, Petitioner was convicted of burglary and theft of property valued over $1,000.00, both Class D felonies. The facts surrounding Petitioner's convictions were summarized by this Court in the direct appeal as follows:

> At approximately 2:45 a.m., on August 4, 2004, Officer Jason Rhodes of the Henderson Police Department was on routine patrol when he saw a short black male wearing dark clothing attempting to push a dolly across East Main Street. Rhodes pulled into the Big Star parking lot to investigate, and he saw the person back the dolly up behind a nearby sign. At that point, Rhodes lost sight of the man. However, seconds later, he observed the man running west on Main Street. Rhodes pursued in

his patrol car, and he observed the male running down Old Jacks Creek Road prior to losing sight of him again. Rhodes, who had radioed for assistance, began to search the area on foot. Approximately three to five minutes after Rhodes had initially seen the man with the dolly, he observed a man, the Appellant, walking towards the dolly, which was still located in the Big Star parking lot. Rhodes noted that the man he approached in the parking lot matched the description of the male he had initially seen with the dolly, although he could not say for sure that it was the same person. Rhodes approached the Appellant and asked what he was doing in the area. The Appellant responded that he was jogging, although it was 2:45 in the morning, and he was wearing jeans and hard-soled shoes and had a strong odor of alcohol about him. Rhodes noted that the Appellant was out of breath and perspiring and that his shoes had grass clippings on them. No one else was seen in the area on foot. The Appellant further advised the officer that he had drunk several beers earlier in the evening. Based upon the fact that the Appellant appeared intoxicated, Rhodes arrested him for public intoxication.

Rhodes then proceeded to inspect the dolly, which was still located behind the sign. On the dolly, he discovered a safe and a plastic garbage bag, which were both attached to the dolly with red tape. Officer Jerry Stansell, who had responded to the radio call for assistance, began checking surrounding businesses to determine if they had been burglarized. During his investigation, he discovered that the back door of the Dollar General, which was located on the opposite end of the Big Star parking lot, had been entered.

The investigation revealed that the back door, which had been sprayed with paint and liquid wrench, was damaged, and several items of merchandise had been destroyed. The office area had also sustained damage, and the manager confirmed that the safe was missing. The manager later identified the safe, found on the dolly, which also belonged to the store, as the missing safe. Additionally, it was determined that the items contained in the garbage bag found on the dolly were also merchandise which had been removed from the store. Those items included clothes, shoes, socks, DVDs, belts, a hammer, gloves, cigarette lighters, cough syrup, batteries, steel wool, and various food items. The store manager valued the items in the bag at $258. He further noted that the safe and the back door, which both had to be replaced, cost $245 and $395 respectively. When the safe was removed from the store, it contained over $5000 in checks and cash, all of which was recovered when the safe was returned to the store.

Investigator Faulkner processed the crime scene and collected evidence. He sent a paint can, along with the tape used to secure the safe and bag to the dolly, to the crime lab for fingerprint comparison. No prints were found on the can, but two latent prints were found on the tape. However, the examiner was unable to make any conclusive identification because the fingerprint card containing the Appellant's

prints did not show the area of the hand necessary for comparison well enough to be used for identification.

. . . At trial, the Appellant testified that he did not commit the burglary or theft of the Dollar General and that he was not intoxicated at the time of his arrest. He maintained that he had simply left his uncle's home and gone for a jog.

State v. William T. Utley, No. W2006-01486-CCA-R3-CD, 2007 WL151545, at *1-2 (Tenn. Crim. App., at Jackson, May 23, 2007), perm. to appeal denied (Tenn. Sept. 24, 2007). Following a sentencing hearing, the trial court sentenced Defendant to concurrent sentences of four years for each felony conviction. The trial court denied Defendant's request for alternative sentencing and ordered Defendant to serve his sentences in confinement.

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner testified that trial counsel's performance was deficient because he did not object to the State's failure to file a notice of request for enhanced punishment ten days prior to trial. Petitioner stated that trial counsel did not interview his uncle, Leon Hollingsworth, or his sister, Amanda Trice. Petitioner said that he was not notified when his trial was continued on two occasions, and he did not know that his case was scheduled for trial until the day before his trial date. Petitioner said that Ms. Trice went to trial counsel's office on November 11, 2005, to pay his attorney fees, and trial counsel told Ms. Trice to tell Petitioner to be in court on November 12, 2005. Petitioner stated that trial counsel told him that he was "an innocent man," and the State had no evidence against him. Petitioner said that he did not know until his trial that the State had certain photographs.

Petitioner said that he received the maximum sentence in his sentencing range and contended that trial counsel's assistance was deficient in not arguing the issue "a little bit heavier than what he did."

Petitioner stated that trial counsel's assistance was deficient for not exercising his peremptory challenges to avoid impaneling an all-white jury. Petitioner did not specifically recollect if there were any prospective African-American jurors in the jury venire, but Petitioner said that he was the only African-American in the courtroom other than one woman who sat in the back.

Petitioner said that he met trial counsel on the street one day prior to trial, and trial counsel asked, "If I asked you to take the stand, would you take it?" Petitioner responded, "Yeah. I don't have nothing to lose. They don't have nothing [sic] on me. Yeah, I'll take the stand." Petitioner said that he thought that he would tell the truth on the stand, "and it would be a done deal." Petitioner said that he did not realize that the prosecutor would ask him "some off-the-wall questions" on cross-examination.

-3-

On cross-examination, Petitioner denied committing the charged offenses and insisted that he was out jogging when he was apprehended. Petitioner acknowledged that there were no prospective African-American jurors in the jury venire. Petitioner conceded that he frequently went to trial counsel's office prior to trial, but he said that the two did not discuss any aspects of Petitioner's case other than Petitioner's innocence. Petitioner stated that he did not see the State's notice of request for enhanced punishment which was filed in January 2005. Petitioner acknowledged that neither Mr. Hollingsworth nor Ms. Trice was with him when he was apprehended. Petitioner stated, however, that Mr. Hollingsworth would have testified that Petitioner had been at his house earlier that evening.

Amanda Sue Trice, Petitioner's sister, testified that she accompanied Petitioner to his initial meeting with trial counsel. Ms. Trice stated that her only other contact with trial counsel occurred when trial counsel told her that Petitioner's trial was scheduled for the next day. Ms. Trice said that she did not know anything about the details of Petitioner's case.

Leon Hollingsworth, Petitioner's uncle, testified that he told the investigating officer that Petitioner had come to his house on August 3, 2004, at approximately 6:00 p.m., and had left the next morning. Mr. Hollingsworth said that Petitioner told him that he was going to visit a friend when he left Mr. Hollingsworth's residence. Mr. Hollingsworth said that the investigating officer asked him what size clothes and shoes he wore the day after the offenses, and then he did not have any further contact with the investigation. Mr. Hollingsworth said that Petitioner's trial counsel did not contact him prior to trial. On cross-examination, Mr. Hollingsworth acknowledged that he did not know anything about Petitioner's case other than the fact that Petitioner left his house sometime in the early morning of August 4, 2004.

Trial counsel testified that he had been practicing law since 1993 and had participated in approximately 120 criminal trials. Trial counsel stated that in preparing for trial, he considered an alibi defense but decided against presentation of that defense because Petitioner was apprehended at the scene of the crime, and the evidence was entirely circumstantial. Trial counsel stated that it was not his practice to tell his clients that they are innocent of the charges. Trial counsel said that he might have told Petitioner that if he were innocent, the jury "would be able to sense that and find him not guilty."

Trial counsel stated that Petitioner frequently stopped by his office, and trial counsel shared the information the State provided in response to his motion for discovery. Trial counsel stated that Petitioner was in no "hurry to get to trial," and trial counsel consulted with Petitioner prior to agreeing to both of the State's motions for a continuance. Trial counsel said that Petitioner was aware of his trial date.

Trial counsel said that he requested the trial court to sentence Petitioner in the middle of the sentencing range and asked the trial court to suspend Petitioner's sentence and place him on probation. Trial counsel could not specifically recollect if he requested the trial court to place Petitioner in an alcohol rehabilitation program as a condition of probation, but he stated that "maybe

[he] should have." Trial counsel said that he did not press the issue of why the investigating officers had not lifted more than three set of fingerprints at the store because none of the fingerprints that were lifted matched Petitioner's fingerprints. Trial counsel felt that the lack of fingerprints supported Petitioner's theory of defense that he had not been inside the store at the time of the offense.

Trial counsel acknowledged that there were no prospective African-American jurors in the jury venire, and he said that Petitioner brought this fact to his attention. Trial counsel said that he did not file a motion for change of venue, however, because he did not believe he would prevail based on the lack of publicity over the case. Trial counsel said that he exercised at least "two or three" peremptory challenges based on his evaluation that the replacement juror would be more beneficial than the excused juror. Trial counsel acknowledged that some of the prospective jurors were related by blood or marriage. Trial counsel said, however, that the trial court explained the role of juror to the jury panel, and each prospective juror agreed that he or she could render a fair and impartial decision.

In response to the trial court's questions, trial counsel said that he received the State's notice of request for enhanced punishment in January 2005, and trial counsel and Petitioner discussed Petitioner's prior convictions. Trial counsel stated that they also discussed a possible plea agreement, but Petitioner insisted on proceeding to trial. Trial counsel said that he did not call Mr. Hollingsworth and Ms. Trice as witnesses because they did not have direct knowledge of what happened after Petitioner left Mr. Hollingsworth's house.

Petitioner was called to the stand again. He denied that any prospective jurors had been excused from the jury pool and insisted that he did not know his trial date until the day before his trial was scheduled to begin. Petitioner denied that the trial court told him the trial date during a court appearance some time before the scheduled trial date. Petitioner insisted that he had not seen the State's discovery file prior to trial and only received his "papers" after he was incarcerated.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). However, the trial court's application of the law to the facts is reviewed de novo, without a presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. Id.; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). In reviewing

counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. Id. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the Strickland test before he or she may prevail on a claim of ineffective assistance of counsel. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. Id. Failure to satisfy either prong will result in the denial of relief. Id. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Analysis

### A. Pre-Trial Assistance

Petitioner argues that trial counsel's assistance was deficient because trial counsel failed to: (1) keep a record of his meetings with Petitioner; (2) inform Petitioner of the date of his trial until the day before; (3) interview prospective witnesses; and (4) object to the lack of prospective African-American jurors in the jury venire.

At the post-conviction hearing, trial counsel testified that Petitioner frequently came to his office with or without an appointment. Trial counsel stated that he and Petitioner reviewed the State's discovery and discussed aspects of Petitioner's case. Trial counsel testified that Petitioner was aware of his trial date. Trial counsel said that he considered an alibi defense but rejected this theory of defense because Petitioner was apprehended at the scene of the crime. Trial counsel stated that he did not call either Mr. Hollingsworth or Ms. Trice as witnesses because they did not have direct knowledge of what Petitioner did after he left Mr. Hollingsworth's residence, and, as a matter of trial strategy, trial counsel did not want to "muddy the waters" with testimony on extraneous subjects. The testimony of Mr. Hollingsworth and Ms. Trice at the post-conviction hearing did not demonstrate that they had any information that would have been beneficial to Petitioner at trial. In fact, Mr. Hollingsworth testified that Petitioner told him that he was going to visit friends after he left Mr. Hollingsworth's residence which contradicted Petitioner's theory of defense at trial that he was simply out jogging when he was apprehended.

The post-conviction court credited trial counsel's testimony and found that trial counsel was "an experienced trial attorney and provided the best possible defense under the circumstance[s]." Based on our review of the record, we conclude that the evidence does not preponderate against the

post-conviction court's finding that trial counsel's assistance was within the standard demanded of competent defense counsel.

## B.  Jury Venire

Petitioner, an African-American, argues that trial counsel's assistance was ineffective because he failed to object to the impanelment of an all-white jury.  Trial counsel acknowledged at the evidentiary hearing that none of the members of the jury venire were African-American.  Trial counsel testified, however, that he exercised "two or three" peremptory challenges during the selection process when he deemed it prudent.  Trial counsel stated that he decided not to move for a change of venue in light of the lack of publicity over the case.

No person has a constitutional right to be tried by a jury of his or her own race, either in whole or in part.  Harvey v. State, 749 S.W.2d 478, 481 (Tenn. Crim. App. 1987); see also Wheeler v. State, 539 S.W.2d 812, 815 (Tenn. Crim. App. 1976).  The mere fact that there were no African Americans on the jury is not proof of a violation of any right.  Harvey, 749 S.W.2d at 481.  To establish an improper jury venire, one must show: "'(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process.'"  State v. Nelson, 603 S.W.2d 158, 161 (Tenn. Crim. App. 1980) (quoting Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 668 (1979)).

There was no evidence presented at the evidentiary hearing that the jury selection process in Chester County was unconstitutional.  The post-conviction court found that trial counsel's assistance was not deficient in this regard, noting that there was "certainly no proof offered of any discrimination or that the jury was prejudiced against the defendant particularly in light of their acquittal on one charge."  Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that trial counsel's conduct during the jury selection process was not deficient and that Petitioner failed to show that he was prejudiced as a result of the impanelment of an all-white jury.  Petitioner is not entitled to relief on this issue.

## C.  Issues Raised for the First Time on Appeal

On appeal, Petitioner raises two issues which were not raised in his petition for post-conviction relief but were developed during the testimony presented at the evidentiary hearing.  At the post-conviction hearing, Petitioner testified that he would not have elected to testify at trial if he had known he would be subject to cross-examination by the State.  Petitioner argues on appeal that if he had chosen not to testify, the result of his trial might have been different.

Petitioner also argues that trial counsel's assistance was ineffective because he did not request the trial court to consider an alternative form of sentencing which included Petitioner's participation in an alcohol rehabilitation program.  In his petition for post-conviction relief,

Petitioner challenged only the length of his sentence and testified at the evidentiary hearing that trial counsel should "have argued the issue a little bit heavier than what he did." The issue concerning the rehabilitation program, however, was first developed during trial counsel's direct examination when he stated that he could not recollect asking for alcohol rehabilitation as a condition of probation.

These specific grounds for relief were not raised in Petitioner's petition for post-conviction relief. All factual allegations supporting the petition must be presented in one claim. See T.C.A.§ 40-30-106(d). In any event, Petitioner failed to present any proof in support of his claim at the evidentiary hearing that trial counsel failed to explain the ramifications of testifying other than his own testimony. No proof was offered on Petitioner's allegation that the trial court would have granted his request for alternative sentencing if trial counsel had included rehabilitation as a possible condition of probation other than trial counsel's brief response as noted above. Furthermore, the post-conviction court did not make any findings of fact on these factual allegations. See Erika Louise Bunkley Patrick v. State, No. W2004-02217-CCA-R3-PC, 2006 WL 211824, at *10 (Tenn. Crim. App., at Jackson, Jan. 24, 2006), no perm. to appeal filed (citing Tenn. R.App. P. 36(a) (No "relief may be granted in contravention of the province of the trier of fact.")). Consequently, these issues have been waived.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

-8-